FELICE JOHN VITI, Acting United States Attorney (#7007)
CHRISTOPHER BURTON, Assistant United States Attorney (NV #12940)
BRADY WILSON, Assistant United States Attorney (#17350)
Attorneys for the United States of America
20 North Main Street, Suite 208
St. George, Utah  84770
Telephone:  (435) 634-4270
Christopher.Burton4@usdoj.gov
Brady.Wilson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | Case No. 4:25-cr-00031-AMA-PK |
|---|---|
| Plaintiff, | |
| vs. | UNITED STATES' SENTENCING MEMORANDUM |
| RYAN PATCH, | Judge Ann Marie McIff Allen |
| Defendant. | Sentencing Date: July 31, 2025 |

The United States of America, by and through Assistant United States Attorney Christopher Burton, hereby files this Sentencing Memorandum for Defendant Ryan Patch in this case. As detailed below, in consideration of the facts and circumstances of the instant offense and Patch's immediate acceptance of responsibility in this federal matter, the United States recommends a sentence of 180 months, followed by a lifetime term of supervised release.

## I.    RELEVANT FACTS

On July 24, 2024, Cedar City Police Department received a call of a abducted minor being transported through Utah.[1] According to the reporting party, the 15-year-old victim had been taken from their home in California in the early morning hours of July 24 and was being transported to Ohio.[2] The victim had been able to contact her family from a newly created Instagram account and provide them information about where she was.[3] Based on her description, officers responded to a location in Cedar City and found a car matching the description the victim had provided.[4]

In the car, officers saw a teenage girl in the back seat and an adult male in the front seat, who appeared to be sleeping.[5] The trooper woke the driver up and he identified himself as Ryan Patch.[6] When asked who was in the backseat, Patch repeatedly claimed it was his sister.[7] The trooper spoke with the child in the back seat and confirmed her identity as the victim.[8]

The victim told police officers that she met Patch on Instagram and told him she was 15 years old from the outset.[9] The victim and Patch then exchanged messages over

---

[1] Presentence Investigation Report ("PSR") at ¶ 7.
[2] *Id.*
[3] *Id.*
[4] *Id.* at ¶ 8.
[5] *Id.*
[6] *Id.* at ¶ 9.
[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶¶ 16-19. Patch corroborated the victim's statement during his psychosexual evaluation, saying she told Patch her true age "shortly after" their online relationship began.

Instagram and Snapchat, where Patch solicited nude photographs and videos.[10] During the online back-and-forth, the two discussed Patch travelling from where he lived in Ohio to California to meet her.[11] As the two discussed the trip, they planned on Patch taking the victim back with him to Ohio.[12]

In the early morning hours of July 24, Patch arrived at the victim's home and she met him a short distance away.[13] He asked for her phone and immediately broke it and threw it.[14] Ahead of the trip, Patch had also told the victim to factory reset various electronic devices and both had deleted their respective Snapchat and Instagram accounts.[15] When the victim got in the car, Patch gave her an iPad as a present.[16] The two then began travelling back to Ohio.[17] The victim stated that Patch gave her marijuana to smoke throughout the trip and it made it difficult for her to think clearly.[18]

The victim fell asleep while in the car and woke up to Patch sexually assaulting her.[19] The victim believes they were in California or Nevada at the time and Patch had pulled over to the side of the road.[20] The victim also noticed that she had something on

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

her neck and realized it was a collar with a lock on it.[21] The victim later learned that Patch had the key for the collar.[22] The victim became scared of Patch and noticed that he had a knife in the vehicle with him as well.[23] At some point, the victim used the iPad to create a new Instagram account and message her friends and family for help.[24] The victim also said that she and Patch had gone to a Wal-Mart in Cedar City that morning and Patch had bought her shoes and a $200 Roblox gift card to purchase games on the iPad.[25]

At the time the victim was rescued, she was wearing the collar that Patch placed on her.[26] The collar said "baby girl" and had a lock on it.[27] Officers found the keys to the lock on a keychain with a decal reading "daddy" in the front driver's seat area.[28] Officers also seized the iPad the victim was using as well as Patch's cell phone.[29]

On the iPad, officers found child sexual abuse material depicting the victim nude in the back of Patch's vehicle.[30] The metadata for the videos showed they were created in Nevada.[31]

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at ¶¶ 14, 28.
[28] *Id.* at ¶¶ 12, 14, 28.
[29] *Id.* at ¶¶ 40, 41.
[30] *Id.* at ¶ 41.
[31] *Id.*

On Patch's cell phone, he had the victim's phone number saved under "Ben Dover."[32] In text messages sent from Patch to the victim while he was travelling, he directed her to "factory datta reset your computer too tn."[33] Later, when the victim expressed some anxiety about meeting up, Patch responded "as you wish babygirl, try to think of the life that we'll build together, focus on what we have to look forward to. I'm here when you're ready."

As officers continued their investigation at the scene, Patch appeared to suffer some sort of medical episode.[34] Paramedics were called and they could not find anything medically wrong with Patch, but he was nonetheless transported to the hospital.[35] After spending some time there, Patch was released back to the custody of police.[36]

Patch was then transported to the station and interviewed post-*Miranda*.[37] Patch claimed he believed the victim was over the age of 18 until they were travelling back from California.[38] Patch claimed he learned the victim was 15 years old in Nevada.[39] Patch could not explain why he didn't return the victim to her home or contact authorities after learning her true age.[40] Patch admitted they had sex in the car before he learned the

---

[32] *Id.* at ¶ 29.
[33] *Id.*
[34] *Id.* at ¶ 21.
[35] *Id.*
[36] *Id.*
[37] *Id.* at ¶¶ 20-29.
[38] *Id.*
[39] *Id.*
[40] *Id.*

victim's true age.[41] Patch claimed the victim was conscious when they had sex.[42] Patch admitted to picking up the victim outside her parent's house in the middle of the night and that he parked down the street so as to not wake anybody up.[43]

When pressed on his knowledge of the victim's age, Patch admitted he harbored some doubts because he asked her for identification proving her age and she never provided any.[44] Patch also admitted he and the victim engaged in "age play" but would not provide any additional specifics.[45] Patch claimed that the victim's collar and his keys were part of this "age play."[46]

Patch admitted to telling the victim to factory reset her devices but denied it was to destroy evidence of their relationship.[47] Instead, he first claimed it was because he knew the victim wasn't going to be using those devices anymore but then claimed the victim had been having some technical difficulties and he was trying to help her.[48] Patch also admitted he and the victim deleted their social media accounts prior to the trip and claimed they weren't "going to need them anymore."[49] Patch admitted to giving the

---

[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

victim various gifts during his relationship with her, including a $500 promise ring, a vibrator, the iPad found in his car, a Roblox gift card, and shoes.[50]

After concluding the interview, officers left Patch alone in the interview room.[51] Patch then removed a plastic bag from a nearby trash can and put it over his head in an apparent suicide attempt.[52] Officers reentered the room and prevented Patch's death.[53]

Given the victim claimed that she and Patch had gone to a Wal-Mart that morning, officers responded to the Wal-Mart to obtain video surveillance.[54] On the morning of July 24, Patch and the victim went into Wal-Mart and purchased shoes and a Roblox gift card.[55] As they entered the store, the victim was wearing socks but no shoes and a dark hoodie with the hood drawn up.[56] The victim was also wearing a face mask; Patch was not.[57] As she passed others in the store, the victim would turn her face away from them.[58] After Patch purchased the shoes and gift card, he gave the victim the gift card and then put the shoes on her feet and tied the laces.[59] The two then left the store.[60]

---

[50] *Id.*
[51] *Id.* at ¶ 86.
[52] *Id.*
[53] *Id.*
[54] *Id.* at ¶ 34.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

Investigators also executed search warrants on Snapchat accounts known to belong to Patch and the victim.[61] Both accounts contained child pornography depicting the victim.[62] There were also some messages between the accounts, including a brief discussion of Patch getting time off of work in July to "come get" the victim.[63] In Patch's Snapchat account, there were messages with other users where Patch claimed he always asks for identification before he does anything with girls.[64] There were also messages and photos exchanged between Patch's account and other accounts that appeared to belong to underage minors, including explicit photographs.[65]

## II. SENTENCING GUIDELINES

All sentencing proceedings should begin with correctly calculated sentencing guidelines.[66] As calculated in the Presentence Investigation Report, Patch's base offense level is 28.[67] Patch receives a two-level enhancement because he unduly influenced the victim, another two-level enhancement because he used a computer, and another two-level enhancement because he committed a sex act or sexual contact with the victim.[68] Patch receives a three-level reduction under USSG 3E1.1 given he pleaded guilty and accepted responsibility.[69]

---

[61] *Id.* at ¶¶ 37-38, 42.
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *United States v. Rosales-Miranda*, 755 F.3d 1253, 1259 (10th Cir. 2014).
[67] PSR at ¶ 48.
[68] *Id.* at ¶¶ 49-51.
[69] *Id.* at ¶¶ 57-58.

### III.   SENTENCING DISCUSSION

After calculation of the guidelines, the Court must examine the factors under 18 U.S.C. § 3553(a) to consider a just and fair sentence - a sentence that is sufficient, but not greater than necessary. A sentence of 180 months is just and fair without being greater than necessary and comports with the 3553(a) factors. Patch's offense, meticulously planned over the course of several months, is egregious and the substantial harm he caused will likely have significant and lasting impact on the victim.

   A.   *The Nature and Circumstances of the Offense Warrant the Requested Sentence*

Over the course of several months, Patch exchanged messages and explicit material with the victim. During that time, Patch also discussed abducting the victim from her family and separating them by thousands of miles. He then went about painstakingly planning the abduction of the victim, a child. He directed the victim to factory reset her electronic devices and they both deleted their social media accounts. He parked his vehicle down the street from the victim's home in the middle of the night as her family slept. He took her phone, broke it, and threw it. All of this was part of Patch's careful and deviant plan to steal the victim from her family forever. It was only due to the victim's technological savvy and quick thinking that Patch's terrifying plan was undone.

Of course, Patch's crimes have caused the victim and her family to live horrors no one should have to endure. Both the victim and her father have described some of the trauma Patch inflicted upon them in written statements, submitted to this Court as sealed

exhibits and previously provided to counsel in discovery. That pain and trauma continues to this day and will likely endure for the foreseeable future.

The facts and circumstances of Patch's heinous crime are uniquely disturbing and warrant a substantial sentence.

### B. Patch's History and Characteristics Likewise Warrant the Requested Sentence

When determining the appropriate sentence, this Court should also consider the fact that the victim was not the only minor that Patch exploited. A search warrant for Patch's Snapchat account showed that he solicited numerous other people, including minors, for nude photos.[70] This evidence contradicts Patch's claim that he merely continued the relationship the victim initiated because he had unique romantic feelings for her and not because of any sexual attraction to minors. Instead, it appears Patch targeted multiple minors and his behavior with the victim was not anomalous. Patch's history demonstrates a clear sexual attraction to minors and a willingness to indulge the same. His punishment should reflect that.

On the other hand, Patch's willingness to waive indictment and plead guilty to an Information at his initial appearance suggests that he unequivocally accepts responsibility for his offense. This gives the Court some hope that Patch understands the terrible nature of his offense. Additionally, although Patch made some statements that appear to cast his crime as following the lead of and falling in love with the wrong person, at bottom he

---

[70] *Id.* at ¶¶ 37, 42.

acknowledges he was very much in the wrong for exploiting and ultimately stealing the victim away from her family. This likewise gives the United States some degree of hope that Patch accepts responsibility for the offense. Especially in the context of sex offenses, a willingness to accept responsibility generally bodes well when considering potential recidivism and that should be taken into consideration when examining Patch's characteristics.

  C. *The Requested Sentence Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provide Just Punishment*

Abducting and sexually abusing a child are very egregious offenses. And the only thing that prevented the victim's family from losing her forever was the quick action of the victim, her family and friends, and law enforcement. Sexual predators like Patch target the weakest and most vulnerable members of our community and 180 months is a just sentence for Patch's crime.

  D. *The Requested Sentence Affords Adequate Deterrence*

The Court should impose a sentence that sends a message to Patch, and to the community, that the judicial system abhors the sexual exploitation of minors, especially when that exploitation includes the interstate transportation. One hopes the requested sentence would demonstrate to Patch and the public that his crimes are fully incompatible with appropriate citizenship in the community. The requested sentence would further demonstrate that the United States' judicial system recognizes the severity of the danger Patch presents to the community and specifically children.

  E. *The Requested Sentence Protects the Public from Further Crimes and Provides Correctional Treatment, Educational Training, and the Like for Patch*

This Court must protect the public, and specifically minors, from Patch. And although Patch's psychosexual evaluation concludes that his scores on various risk evaluations place him as a "below average" risk, that conclusion requires some context. There are numerous difficulties in assessing a likelihood of recidivism for child sex offenders given child sexual abuse is vastly underreported.[71] And risk evaluations such as the Static-99R (administered to Patch here) calibrate the chances of reoffending within only the subsequent five years.[72] But when the question of recidivism is extended to longer periods of time, the likelihood of reoffending increases significantly. Indeed, in one study measuring a range of 25 to 32 years, 25% of heterosexual pedophiles and 50% of homosexual pedophiles reoffended.[73] Given Patch presents a serious and longstanding risk to the public, a longer sentence is warranted in order to protect the public and especially children from further crimes at his hands.

  F. *The Sentence Avoids Unwarranted Sentencing Disparities Among Similarly Situated Defendants*

"A properly calculated Guidelines sentence will typically reflect an accurate

---

[71] Ryan C. W. Hall, MD, and Richard C.W. Hall, MD, PA, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, April 2007 Mayo Clinic Proceedings 82(4), 457-471, 467 (stating "just as the prevalence of pedophilia is not accurately known, the rate of recidivism against a child is also unknown" and noting the data underestimates recidivism because it fails to account for study dropouts and unreported sexual offenses, as well as fails to use polygraph examinations).
[72] PSR at ¶ 87.
[73] Hall, et al., at 467.

application of the factors listed in § 3553(a), including the need to avoid unwarranted sentencing disparities under § 3553(a)(6)."[74] Here, the parties have agreed to a sentence of 180 months, which is an appropriate upward departure from the guidelines range. Had Patch been charged and convicted of sexually exploiting the victim for the purpose of producing child pornography (a violation of 18 U.S.C. 2251(a)), he would have faced a mandatory minimum sentence of 15 years' imprisonment. Additionally, his likely guidelines range would have been 168-210 months with acceptance of responsibility.[75] The stipulated sentence of 180 months is therefore reasonable and provides any mercy that is warranted without resulting in further unwarranted sentencing disparities among similarly situated defendants.

## IV.    SUPERVISED RELEASE

The United States requests a lifetime term of supervised release following Patch's release from custody, with all the conditions listed in the PSR to be imposed. Such a term would go far in keeping the community safe and providing offender-management services to Patch. Lifetime supervision serves the purpose of helping Patch stay accountable and continue to receive sex offender treatment after his release from custody. A lifetime term of supervised release is especially appropriate here, where the evidence

---

[74] *United States v. Hildreth*, 485 F.3d 1120, 1128 (10th Cir. 2007) (cleaned up).
[75] The applicable guidelines for 18 U.S.C. § 2251(a) is USSG § 2G2.1. Under that guidelines provision, Patch's base offense level would have been 32. He would have likely received a two-level enhancement because the offense involved a child between 12 and 16 years of age, a two-level enhancement because the offense involved sexual contact, and a two-level enhancement because the offense involved a computer, resulting in a total offense level of 38, which would have been reduced by three levels if Patch had accepted responsibility.

demonstrates that Patch was sexually exploiting multiple minors during the course of the instant offense and given just how far Patch has demonstrably gone to satisfy his deviant sexual interests. As such, it is in the interest of justice and the public to ensure that Patch is supervised and provided resources to manage his sexually deviant urges throughout the remainder of his life.

## V.    CONCLUSION

Based on the foregoing, the United States recommends a sentence of 180 months, followed by a lifetime term of supervised release. This recommendation accounts for all of the factors enumerated in 18 U.S.C. § 3553(a). In accordance with the facts and arguments discussed above, the United States requests this sentence because it is sufficient, but not greater than necessary, for Patch's punishment.

DATED this 24th day of July, 2025.

                                          FELICE JOHN VITI
                                          Acting United States Attorney

                                          /s/ *Christopher Burton*
                                          CHRISTOPHER BURTON
                                          Assistant United States Attorney